UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALEWA RANDOLF KWALAR,<br><br>Petitioner,<br><br>v.<br><br>Warden, Otay Mesa Detention Center; Secretary of Homeland Security; Attorney General,<br><br>Respondents. | Case No.: 3:26-cv-2447-JES-BLM<br><br>**ORDER REQUESTING STATUS REPORT FROM RESPONDENTS BY JUNE 30, 2026**<br><br>**[ECF No. 1]** |

Before the Court is Petitioner Balewa Randolf Kwalar's ("Petitioner") Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241. ECF No. 1, ("Pet."). Pursuant to the Court's Order to Show Cause (ECF No. 3), Respondents (the "Government") filed the Return to the Petition. ECF No. 5, ("Ret."). The Court then took the matter under submission. For the reasons set forth below, the Court finds that the Petition is not yet ripe for adjudication and **ORDERS** Respondents to **FILE** a Status Report after June 26, 2026, but no later than June 30, 2026.

1

## I. BACKGROUND

Petitioner is a native and citizen of Cameroon. Ret. at 2. On December 26, 2025, Petitioner was detained by U.S. Customs and Border Protection while attempting to unlawfully enter the United States near San Ysidro, California. *Id*.; ECF No. 4-2 at 2. Petitioner was deemed inadmissible under 8 U.S.C. § ("Section") 1182(a)(7)(A)(i)(I), placed in expedited removal proceedings pursuant to Section 1225(b)(1), and taken into Immigration and Customs Enforcement ("ICE") custody. Ret. at 2.

While in ICE custody, Petitioner expressed a fear of return to Cameroon and, on January 2, 2026, Petitioner received a positive credible fear determination. ECF No. 4-1 at 9, 13. On January 6, 2026, removal proceedings pursuant to Section 1229(a) were initiated against Petitioner. Ret. at 2; ECF No. 4-1 at 2. Petitioner's initial master calendar hearing was held on January 15, 2026. ECF No. 4-3 at 6. On January 30, 2026, Petitioner filed an application for asylum, withholding of removal, and relief under the Convention Against Torture. *Id.*

On February 4, 2026, the Department of Homeland Security moved to pretermit Petitioner's applications based on the Asylum Cooperation Agreement ("ACA") with Uganda. ECF No. 4-4 at 2. On February 27, 2026, an Immigration Judge ("IJ") granted the motion and ordered Petitioner removed to Uganda. *Id.* at 4. On March 5, 2026, Petitioner timely filed an appeal of the IJ's decision to the Board of Immigration Appeals ("BIA"). ECF No. 4-5 at 2. At this time, Petitioner's appeal remains pending before the BIA. Ret. at 3; ECF No. 4-3 at 3.

Petitioner has been detained at Otay Mesa Detention Center ("OMDC") for the last four months, since December 26, 2025. Ret. at 3. In response to such detention, Petitioner filed this action, seeking habeas relief in the form of his immediate release or, in the alternative, an individualized bond hearing before an IJ. Pet. at 7.

//

//

//

3:26-cv-2447-JES-BLM

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.   DISCUSSION

Petitioner alleges that his continued detention, without receiving an individualized bond hearing, violates the Due Process Clause of the Fifth Amendment. Pet. at 6–7. In its Return, the Government argues: (1) the Court lacks jurisdiction under Section 1252(g); (2) Petitioner is lawfully detained under Section 1225(b)(1)(B)(ii); and (3) Petitioner's detention has not become unconstitutionally prolonged. Ret. at 3–12. The Court addresses each in turn.

The Court recently addressed these issues in *Sandesh v. LaRose*, No. 26-CV-0846-JES-DDL, 2026 WL 622690, at *1–6 (S.D. Cal. Mar. 5, 2026). Accordingly, the Court elects to follow that same rationale here and incorporates it by reference.

### A.   The Court has Jurisdiction to Hear This Petition

The Government contends that this Court lacks jurisdiction because Petitioner's claims "arise from" the Government's decision to commence removal proceedings, thereby triggering Section 1252(g)'s jurisdiction-stripping provision. Ret. at 4–5. The Court disagrees.

3:26-cv-2447-JES-BLM

Here, Petitioner is challenging the conditions and duration of his detention, not the decision to commence or carry out removal proceedings. Pet. at 6-7. This Petition, therefore, falls outside Section 1252(g)'s scope. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (holding that § 1252(f)(1) does not preclude habeas jurisdiction over detention challenges).

The Court finds that Section 1252's jurisdiction stripping provisions do not apply here. Thus, it has jurisdiction to hear this action. *See Martinez Lopez v. Noem*, No. 25-cv-2717-JES-AHG, 2025 WL 3030457, at *2–3 (S.D. Cal. Oct. 30, 2025).

### B.      Petitioner Is Properly Detained Under Section 1225(b)

The Court agrees with Respondents that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii). Ret. at 5–6. Petitioner was apprehended near the U.S.-Mexico border without valid entry documents. Ret. at 2; ECF No. 4-2 at 2. He was found to be an "applicant for admission," as defined by 8 U.S.C. § 1225(a)(1), and following his positive credible fear determination, is subject to detention "for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii); *Jennings*, 583 U.S. at 287, 297. Since being apprehended, Petitioner has not been granted any form of parole. Ret. at 6. The Court, therefore, finds that Petitioner is appropriately detained under 8 U.S.C. § 1225(b). *See Jennings*, 583 U.S. at 287; *see also Sandesh*, 2026 WL 622690, at *2.

### C.      The Banda Factors Weigh in Favor of Ordering a Bond Hearing

This Court, along with numerous others within this Circuit, has found that prolonged mandatory detention will, at some point, raise due process concerns. *Sandesh*, 2026 WL 622690, at *2–3. Courts consider the following factors to determine whether a noncitizen's prolonged detention under Section 1225 is unconstitutional:

(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019). The Court now turns to apply this test.

### (1) Length of Detention

The first *Banda* factor, total length of detention, is "the most important factor." *Id.* "Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable" *Amado v. United States Dep't of Just.*, No. 25-CV2687-LL (DDL), 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) (finding detention of thirteen months to weigh in favor of the petitioner); *Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *3 (S.D. Cal. Nov. 12, 2025) (finding that although "almost 12 months" detention was not dispositive, factor does weigh in favor of petitioner); *Gao v. LaRose*, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025) ("The Court finds that Petitioner's detention for over 10 months without a bond hearing, in the context of the specific circumstances described above, has become unreasonable and violates due process."); *Tonoyan v. Andrews*, No. 1:25-CV-00815-SKO (HC), 2025 WL 3013684, at *4 (E.D. Cal. Oct. 28, 2025) ("Petitioner has been detained approximately 11 months. This period . . . qualifies as prolonged."); *Gonzalez v. Bonnar*, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) ("In general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'") (citation omitted).

Courts have found this factor to be neutral where petitioners were, at the time of review, subjected to shorter periods of detention. *See Odimara v. Bostock*, No. 2:24-CV-572-JHC-GJL, 2024 WL 3862256, at *6 (W.D. Wash. July 12, 2024) (finding length of detention neutral or "slightly in favor of granting a bond hearing" where petitioner had been detained "approximately six months"). However, this Court has previously found that this factor weighed slightly in favor of a petitioner that was detained for just over six months. *Islamov v. Doe*, No. 26-cv-01528-JES-VET, 2026 WL 1179873, at *4 (S.D. Cal. April 30, 2026).

//

As of the filing of this Order, Petitioner has been detained since December 26, 2025—which is slightly more than four months' time. Ret. at 3. The length of Petitioner's detention is far less than the range where courts have found to weigh in favor of the petitioner, and shy of even that of the petitioner in *Islamov.* 2026 WL 1179873, at *4 Accordingly, the Court finds that the first *Banda* factor is, at most, neutral.

### (2) Likely Duration of Future Detention

The second *Banda* factor considers the "anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119. "The usual removal process involves an evidentiary hearing before an immigration judge, and at that hearing an alien may attempt to show that he or she should not be removed." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). "If that claim is rejected and the alien is ordered removed, the alien can appeal the removal order to the Board of Immigration Appeals and, if that appeal is unsuccessful, the alien is generally entitled to review in a federal court of appeals." *Id*. Appealing an IJ's order of removal, generally, takes a long time. *See Banda*, 385 F. Supp. 3d at 1119 (finding appeal of removal order with the BIA and review in the Ninth Circuit may take up to two years or longer).

Petitioner has already been issued a removal order and recently filed his appeal to the BIA. ECF No. 4-5 at 2. A negative BIA decision would likely result in Petitioner seeking Ninth Circuit review. Considering that this overall process can take more than two years, the Court finds that this factor weighs in favor of Petitioner. *See Banda*, 385 F. Supp. 3d at 1119.

### (3) Conditions of Detention

"The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id*. at 1119 (citation omitted). The Government does not address OMDC's detention conditions in its Return, and there is no dispute that Petitioner has been held at OMDC for several months. *See generally* Ret.; *id*. at 2. Courts have recognized that the conditions at OMDC

6

are "indistinguishable from penal confinement." *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 773 (S.D. Cal. 2020); *Amado*, 2025 WL 3079052, at \*6. Considering that OMDC's conditions resemble penal confinement, Petitioner's argument, that he is entitled to a bond hearing, is very strong. *See Banda*, 385 F. Supp. 3d at 1119; *see also Kydyrali*, 499 F. Supp. 3d at 773. Accordingly, this factor weighs heavily in Petitioner's favor.

### (4) Delays Caused by the Detainee; and (5) by the Government

The fourth and fifth *Banda* factors examine delays attributable to the petitioner and the Government, respectively. *Banda*, 385 F. Supp. 3d at 1119–20. The record does not reflect any delays attributable to either party. *See generally* Pet.; Ret. at 7. Accordingly, both factors are neutral.

### (6) Likelihood of a Final Order of Removal

The sixth factor looks to the likelihood that the removal proceedings will result in a final order of removal. *Banda*, 385 F. Supp. 3d at 1120 ("In other words, the Court considers whether the noncitizen has asserted any defenses to removal.").

Here, an IJ has already ordered Petitioner removed to Uganda, based on the ACA. ECF No. 4-4 at 4. In response, Petitioner filed a BIA appeal challenging, *inter alia*, the IJ's pretermission of his protection applications and the propriety of Uganda as a designated third country of removal. Pet. at 5. The outcome of Petitioner's immigration proceedings will require an individualized, fact-intensive analysis. The Court is, however, is in no position to assess the merits of his claim for relief, at this stage or on this record. Thus, the Court finds this factor is neutral.

In sum, two *Banda* factors weigh in favor of Petitioner, one of which does so heavily, and the remainder are neutral. Under these circumstances, the Court struggles to find that Petitioner's detention has become so unreasonable that due process requires for him to be afforded an individualized bond hearing. *But see e.g., Sandesh*, 2026 WL 622690, at \*2–3; *Banda*, 385 F. Supp. 3d at 1117–20.

When considering the circumstantial differences between Petitioner and *Islamov*, the Court notes that merely two months' time in custody was dispositive. As a result, the Court

3:26-cv-2447-JES-BLM

finds that Petitioner's claim is not yet ripe for adjudication and declines to rule on the merits of whether a bond hearing is constitutionally required, at this time. However, in the interest of Petitioner's *pro se* status, his constitutional rights, judicial economy, and fairness to both parties, the Court will retain jurisdiction and order a Status Report so that it may assess any existing changed circumstances in two months' time.

### IV.   CONCLUSION

For the reasons discussed above, the Court **ORDERS** as follows:

(1)   Respondents are **ORDERED** to **FILE** a Status Report after **June 26, 2026**, but no later than **June 30, 2026**, informing the Court of:

    a.   Any change in Petitioner's detention status;

    b.   Any decision issued by the BIA in Petitioner's appeal;

    c.   The current projected timeline for resolution of Petitioner's immigration proceedings; and

    d.   Any other changed circumstances materially relevant to the Petitioner.

(2)   If the BIA issues a decision prior to June 26, 2026, Respondents shall notify the Court within seven days of that decision.

**IT IS SO ORDERED.**

Dated: May 1, 2026

_____
Honorable James E. Simmons Jr.
United States District Judge

8

3:26-cv-2447-JES-BLM